Good morning, runners. Steve Hubachek on behalf of Mr. Salazar-Gonzalez. Your Honor, this morning I'd like to address two issues, the failure to give a voluntariness slash knowing act instruction and why we should get a full remand instead of the limited ammoline remand. So first with respect to the jury instruction issue, the Rivera-Cias case confirms again for the umpteenth time that 1326 found in is in fact a general intent crime and it's describes general intent as involving willful and knowing acts. We asked for instruction, it's at page 3 of the E.R. that the jury be required to find that Mr. Salazar-Gonzalez acted knowingly and willfully. How does the evidence support that? There's nothing to indicate he was dropped out of a helicopter, asleep, drunk, drugged, unconscious or anything else. He crosses the border at a point where the fence is at its lowest, 4 foot high versus 11 feet with 11 other people, none of whom should be in this country, and is found 100 yards away hiding in a bush. Now how could that evidence possibly support giving an instruction that he wasn't in this country voluntarily knowing that he was where he shouldn't be? Well, Rivera-Cias talks about the possibility of an inadvertent entry into the United States, and Your Honor is correct that the fence at the point where he was found in that area was 4 feet high as opposed to the much larger fence somewhat to the east. And I think even to the west there's no fence at all because it goes up the mountain at that point. So the fence itself isn't marked. It doesn't say this is an international boundary line. And there actually isn't evidence in the record, I think. Other people just on a picnic or something? Hiding under the bush 100 yards away from the border? The evidence doesn't show whether or not he actually entered with that group. He was found with that group, but it doesn't show. And again, the standard in order to get a jury instruction, it doesn't require that there be a strong case. It's even weak or inconsistent evidence is sufficient to justify a theory of the case type instruction. Voluntariness has to do with, you know, I'm drunk, I'm asleep, I got dropped out of a helicopter. I mean, you know, here I am, but I had nothing to do with my getting here. No, I agree. That would be a pure voluntariness type issue. But Rivera-Sias points out that it's voluntariness plus knowledge. And under circumstances where there could be an inadvertent area. This isn't a case like Parguerosa's where the guy was found in an apartment in Chula Vista or Jimenez Borja where he's in Escondido or any of these other cases where people are actually in the interior where your surroundings alert you to where you are. Here we're in a place where it's a rural area. There's farms here. There's farms in Mexico. There's nothing about the characteristics of the area itself which would necessarily alert you to the fact that you're in the United States as opposed to in the Republic of Mexico. The fence is unmarked. It's short. The area itself was rural with no buildings or any other indications that you're actually in the United States rather than Mexico. So I think even under those circumstances, I understand it's not a strong case, but it's sufficient under this Court's cases which say that if you even have weak and inconsistent evidence, you're still entitled to a theory of the case instruction. And I think that under those circumstances, a rational juror could find that he didn't know that he was in the United States. And under Rivera-Sias, that is a relevant consideration. Now let's move on to the sentencing issue. Under Ammaline, the Court's already referred and I understand the government's going to make another request for further briefing which obviously I don't... I oppose that request. All they're going to do is photocopy all the other briefs they've already filed. I think there's a number of reasons why the Ammaline type remand is not appropriate here. Here we have actual objections in the District Court both to factual findings made by the District Court and to the application of mandatory guidelines. Ammaline, of course, is a plain error case. So here we have preserved error. And the Ammaline opinion itself, and I still have a 28-J letter on this last week. It's at footnote 1. I have the slip opinion version, page 12, footnote 1. It says that a different analysis applies when the error is preserved. And it cites Perrani from the Eighth Circuit, Fagans from the Second, and Antonacopulos from the First. And all those cases say that where you challenge the constitutionality of the guidelines, that's sufficient to preserve the issues. And we did precisely that in this case. I don't remember. Did you make that in the District Court? My impression was you made it in reply to us. No, we made it in the District Court. And I believe it's, I want to say page 119 of the excerpt of record, where the defense specifically argued that the, that's right, 119 of the excerpt of record. The defense specifically argued that the guidelines were unconstitutional. Now, the Fagans case, I think, is particularly relevant here because Fagans follows Crosby, and Crosby is effectively the case that Ammaline chose to follow. And Fagans, at page 140 to 141, that's at 406 Fed Third, it now has a Fed Third site, said, since Fagans objected prior to sentencing to the compulsory application of the guidelines, he has preserved the error and the procedure for applying plain error analysis that we set forth in Crosby is inapplicable. So Fagans effectively says you don't follow Crosby, so I think this panel should hold that where this issue is preserved, that you don't follow an Ammaline type remand and give Mr. Salazar-Gonzalez a full remand for resentencing. I'd also point out that in addition to challenging the actual application of the guidelines, he also made several Sixth Amendment claims. And one of them, I think, is particularly significant. There's an issue in this case as to whether or not his first two prior convictions should have scored criminal history points. The district court found at 141 of the excerpt of record that there was an intervening arrest in between those two prior convictions, so therefore the points for both of those convictions should count. The finding of an intervening arrest is a factual finding that was objected to on the Sixth Amendment basis. And I also cited last week to the, I think it's pronounced no, it's the NGO case from the Seventh Circuit where they applied Shepard to factual findings relating to criminal history and found that those did in fact violate the Sixth Amendment. So I think that Mr. Salazar-Gonzalez has both a Sixth Amendment error and a mandatory nature of the guidelines error, so I think he's entitled to a full remand on that basis. If the Court doesn't have any other questions about that issue, I'll reserve the remainder of my time. And good morning again, Your Honors. Kevin Mulcahy for the United States in this matter. May it please the Court, taking the issues as they were presented by Mr. Hubachek, there are two reasons why there was no instruction given. There's two reasons why there was no, why it was not necessary to give the instruction that the defense asked for. And the first is factually, there were no facts that would support an involuntary act by the defendant in this case. There may be facts that suggest that he was very close to the border, that he didn't get very far, where he wanted to go, but nothing that indicates that he was asleep, drugs, or anything of the sort. Instead, and while... So is it your theory, just so I understand, your theory is that you take issue with the notion that there's any potential affirmative defense that can be made to suggest that there was a mistake or that he wasn't aware, didn't have knowledge that he'd actually crossed, unless he can prove non-confess mentis or kidnapping or transport or something, that's the only area in which you have the affirmative defense? Yes, Your Honor, except it's not necessarily that he has to prove that, but provide some competent evidence of those facts. Why isn't there enough on this record to suggest that at least he has enough to get a theory of the defense instruction? There were no, there was no evidence presented that he did anything involuntarily. The fact that he was very close to the border... I understand, but the question is with knowledge. Knowledge, which leads to our second point, knowledge, the defendant does not have to know that he is in the United States. That is not the law. That would make this a specific intent crime. Instead, he has to do a, knowingly, do a voluntary act. And that, there's no evidence that he did something... So that's what I, I didn't ask the question very well then. Your theory is that if I voluntarily walk over to a group of mesquite on the other side of an unmarked fence, and it turns out that that is in the United States, that I have no defense, that I didn't, I voluntarily walked there, but I didn't realize that I was walking into the United States. I'm a goner. You're a goner, Your Honor. And the reason for that is because, again, nothing that you did would speak to any involuntary action on your part. The fact that the defendant, if we accept this argument at all, that the defendant maybe didn't know where the fence was, which seems implausible, doesn't help him here. Doesn't help him that he thought the fence maybe was to a farm or something in Mexico. He came to the United States voluntarily, and that's our point here. Also, and I'll just speak to this very briefly, the second reason why this instruction wasn't given was legally, so that was factually insufficient. Legally, it's simply not required that he know that he is in the United States. And so both factually and legally, there's no support for this instruction. Therefore, there was no error below. With regard to what type of remand, I can't imagine why Mr. Hubachek would suggest that I would ask for more briefing for the government. Shocks the conscience. Actually, we do make that request again, and we make it with a smile on our face and understand the Court's position on this, so I'll get right to the point of it. There should be no remand of any kind in this case for resentencing, limited or otherwise. And the reason is the judge had a guideline range, even though we believe it was mandatory, of I believe it was 63 to 78 months here. I actually may be confusing that with the other case. He had a guideline range. Within that range, there is no, and there was no, even when the guidelines were mandatory, requirement for him to sentence an individual at the high end, at the low end, or at the middle of the range. There is no requirement. Put another way, and perhaps more plainly put, that was an advisory guideline range. So from X months to Y months is completely advisory. The judge can do that which he wishes in that range. This judge chose, knowing what he knew about the case, knowing what he knew about Mr. Salazar, to go in the middle. And what Ameline teaches is if there was some indication by the Court below that he would not have given a substantially different sentence, a limited remand is not required. There was indication here. But we don't know that for sure because he believed himself to be obligated to sentence under a mandatory regime, and it isn't anymore. So how do we know that? We know that because of where he ended up within this advisory guideline range. So from X months to Y months, the fact that he was in the middle shows he knew without any review from this Court that he could have gone, or from any Court, that he could have gone to the low end, a month above the low end, and so on and so forth. Or outside of it altogether. Or outside of it altogether. Which he didn't know. Well, which he didn't know, but at the same time, within that range, that advisory range, he chose not to go to the low end. We acknowledge that had he gone to the low end, a limited remand would be appropriate here. So, for example, in the case argued previously, was at the low end, a limited remand, except for the argument that we make with regard to nonconstitutional errors, which we would make as well here that Ameline doesn't apply to nonconstitutional errors, but we don't need to even get there in this case because of the middle of the range. Did Your Honor have a question? What about the Sixth Amendment argument, though? Thank you, Your Honor. With regard to the Sixth Amendment argument here, we did receive the case of no, the NGO case, and we would cite this Court and plan on sending a 28-J letter after. I know, Your Honor, you're looking forward to more briefing from the government. That was decided after NGO, where the same Seventh Circuit said that to determine whether there are related State convictions are related to his Federal convictions was not a Sixth Amendment violation, did not require a remand. And we'll send a cite of that case, McGee, M-C-G-E-E, and it's a June 3rd case, so it does not yet have a cite, and we'll send a 28-J letter on that. And I think what that speaks to, what the Seventh Circuit was saying there as opposed to NGO was, look, when there are no, when they just relate to recidivism-based enhancements, which 1326 is, and which McGee talks about under the career offender statute, there is no need, there's no Sixth Amendment implication as held in Apprendi, Booker, or Blakely, Booker, and Shepard. And we'd also point out that there's no Sixth Amendment issue here based on other panels of this Court, since all of the cases I mentioned above, including Shepard, most specifically the Smith case and the Cantana-Cantana case, which Smith cites with approval, all indicate that their prior, the prior cases of this Court that hold that the Sixth Amendment's not implicated by the recidivism-based enhancements continue to apply. And so we think that, frankly, this panel is bound by the panel in Smith and Cantana-Cantana. Hearing no other questions, I'll... I'd just like to briefly return to Judge Fischer's questions about whether or not he was a goner if he passed across the line. I think there'd be a serious constitutional problem with the statute if, in fact, you could not have any idea that you're in the United States and still be subject to liability. I realize that some members of the panel may not think these are the facts for that case, but hypothetically, if you just crossed over the line inadvertently and were subject to a 20-year penalty for that, there would be, I think, a very serious constitutional problem. And I think that's one of the reasons that Rivera-Sias acknowledges both voluntariness defenses and knowledge defenses, and why I think that the instruction in this case should have been given. And I think that the government's argument that it's solely voluntary is contrary to the law after Rivera-Sias. Now, with respect to the remand issue, the issue about whether or not Mr. Salazar-Gonzalez got a mid-range sentence and that somehow indicates that he would get the same sentence on remand, I agree with Judge Reimer, we don't know that. And, again, since these errors are preserved, the government, as opposed to the situation in Amaline, they bear the burden of demonstrating that the error is harmless. And they haven't done that because they can't tell us what the sentence would have been. But I think more aptly, even in the plain error context, the Seventh Circuit and the Palladino case is probably second place in the Amaline case in terms of what they relied upon. But in the Palladino case, they completely rejected the government's argument that the fact that the person got the mid-range sentence should preclude a remand. And Judge Posner wrote, a conscientious judge, one who took the guidelines seriously, whatever his private views, would pick a sentence relative to the guideline range. If he thought the defendant a more serious offender than an offender at the bottom, he would give him a higher sentence, even if he thought the entire range was too high. So we don't know with the district court. The district court may have thought the entire range was too high, but he wanted to array defendants as fairly as he could. We don't know what the analysis is. But Palladino at 401-Fed-3rd at page 482 specifically addresses and rejects the government's argument. Now, with respect to the note, I haven't seen this other Seventh Circuit case that the government is talking about. But the issue as to whether or not there was an intervening arrest in between these two priors was a contested factual issue. The government offered exhibits. The district court judge at 141 of the ER made a finding by preponderance of the evidence. And the date that you're arrested isn't a conviction record. Assuming that Amandaris-Torres applies even further than the Supreme Court said it did in Jones and Apprendi, it doesn't apply to anything other than the fact of conviction. The dispute in the district court had to do with the dates of the arrests and whether or not there was an intervening arrest. That's outside of Amandaris-Torres. And Shepard plainly teaches that we don't broadly read Amandaris-Torres and extend it beyond the context in which it was actually decided, which was solely the fact of conviction, not whether or not there was an intervening arrest. So I don't think that the government's argument is based upon Smith or Quintana Quintana. And Quintana Quintana was cited before Shepard and doesn't cite Shepard or Dretke v. Haley. If Your Honors don't have any other questions, I'll submit. Okay, I think not. Thank you. Thank you. Counsel, the matter of this argument will be submitted and will appear last matter on calendar, which is the Olmos case. Good arguments on both sides. Very helpful.
judges: B. Fletcher, Rymer, Fisher